IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CLAUDIA D. DIPRINZIO        :        NO. 04-872
       :
         Plaintiff,       :
       :
        VS.         :
       :
MBNA AMERICA BANK, N.A.,     :
       :
         Defendant     :

MEMORANDUM AND ORDER

CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE

Currently pending before this Court are the motions of defendant, MBNA America Bank, N.A., ("MBNA"), for partial summary judgment[1] and *in limine*. For the following reasons, it is recommended that defendant's motion for partial summary judgment be granted in part and denied in part, and that the motion *in limine* be granted in part and denied in part.

I.      FACTS[2]

In July of 1999, plaintiff, Claudia DiPrinzio, and her then-husband, Richard Previdi, applied for a joint First Union credit card account. The application was approved, and plaintiff, who resided in Pennsylvania during the marriage, used the credit card several times. On or

---

[1]    Notably, all of defendant's arguments were pursued solely under the guise of a motion *in limine*, despite the fact that half of the claims raised seek relief appropriate for a motion for summary judgment. Even more notably, this motion was not timely filed pursuant to the scheduling order entered by Judge Ludwig on February 9, 2005, which required that dispositive motions be filed at least thirty days prior to the trial date of April 19, 2005. While this Court was tempted to dismiss the summary judgment portions of this motion, two factors prompted us to do otherwise. First and foremost, plaintiff never raised an untimeliness objection, but rather responded to the claims on their merits, meaning this Court would have had to act *sua sponte*. Moreover, subsequent to the filing of this motion, the trial was postponed indefinitely and later scheduled for September 14, 2005. Absent an objection by plaintiff and in light of the extended time the Court has had to consider the motion, we opted to rule on the merits.

[2]   These facts have been stipulated to by both parties by way of an Amended Joint Pretrial Stipulation.

about April 23, 2001, plaintiff and Mr. Previdi legally separated and Mr. Previdi moved to Colorado.  By this time, MBNA had purchased the joint credit card account from First Union. Plaintiff, however, did not notify MBNA of her the separation from Mr. Previdi, nor did she ask them to remove her name from the credit account.

The couple became legally divorced in April of 2002.  In June of 2002, plaintiff was notified by MBNA that a large amount of money was owed on the credit card.  Indeed, just after the couple had first separated, in August of 2001, Mr. Previdi took a cash advance of approximately $15,000 on the account.  When notified by MBNA of the amount owed, plaintiff refused to pay.  She explained to MBNA that her ex-husband had borrowed the money following their separation without her knowledge.  She believed the debt was his to pay.

MBNA disagreed.  Plaintiff alleges that, throughout the summer of 2002, the bank continued to demand that plaintiff pay the credit card bill and she continued to dispute the matter.  She asserts that, during this time, MBNA failed to investigate the matter and failed to even note the dispute on her credit reports.  Following a series of warnings, MBNA reported plaintiff's credit status as "charged off" (a negative credit term) to credit reporting agencies, Trans Union, Equifax and Experian.

Thereafter, plaintiff disputed her credit through the credit bureaus.  She claimed that she was not responsible for the debt, and asserted that the "charged off" status should not appear on her credit reports. Equifax notified MBNA of the dispute, but indicated a different account number than the "charged off" account in dispute.  MBNA responded on April 12, 2003 with a request that Equifax delete the incorrect account number from plaintiff's Equifax credit file. Experian notified MBNA of the dispute associated with the "charged off" MBNA account in

question.  MBNA responded on April 15, 2003 by stating, "Account information accurate as of date reported."  MBNA did not send carbon-copies of its response to Equifax or Trans Union.

Plaintiff thereafter filed a complaint in this Court seeking relief under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq., the Pennsylvania Consumer Protection Law ("CPL"), 73 P.S. §§ 201-1, et seq., and a negligence theory. [3]

II.     DISCUSSION

A.     Summary Judgment Issues

The first half of plaintiff's pending motion seeks a partial summary judgment ruling on both plaintiff's state law claims and her request for punitive damages.  Considering these allegations individually, the Court finds that partial summary judgment is warranted only with respect to plaintiff's claim under the Pennsylvania Consumer Protection Law.

1.     Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  For there to be a "genuine" issue, a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Boyle v. County of

_____

[3] Pursuant to a pre-trial agreement, plaintiff dropped state law claims sounding in defamation and invasion of privacy.

Allegheny, Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993), cert denied, 510 U.S. 994, 114 S. Ct. 554 (1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), cited with approval in Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).  See also Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor".  Anderson, 477 U.S. at 255.

The moving party bears the initial burden of showing an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  However, the moving party need not "support its motion with affidavits or other similar materials negating the opponent's claim."  Id.  Rather, the moving party who does not bear the burden of persuasion at trial will meet this standard simply by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."  Id. at 325.

Once the movant has carried its initial burden, Rule 56(e) shifts the burden to the nonmoving party as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56(e).  However, to raise a genuine issue of material fact, "'the [summary judgment] opponent need not match, item for item, each piece of evidence proffered by the

4

movant,' but simply must exceed the 'mere scintilla' standard." <u>Petruzzi's ICA Supermarkets</u>, 998 F.2d at 1230 (quoting <u>Big Apple BMW, Inc. v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992), <u>cert. denied</u>, 507 U.S. 912, 113 S. Ct. 1262 (1993)).  Summary judgment may be granted only if, after viewing all evidence in the light most favorable to the non-movant, no jury could decide in that party's favor.  <u>Tigg Corp.</u>, 822 F.2d at 361.

    2.    <u>State Law Claims</u>

In the first portion of its motion for partial summary judgment, defendant argues that plaintiff's state law claims are barred by the FCRA, a federal statute requiring furnishers of credit information to provide consumer reporting agencies with accurate data.  15 U.S.C. §§ 1681 <u>et seq.</u> (2002).  Defendant's argument turns on two "preemption" provisions contained within the FCRA that preclude state law causes of action against furnishers of credit information: section 1681h(e), which provides qualified immunity to furnishers of credit information, and section 1681t(b)(1)(F), which outlines more absolute immunity to certain types of state law claims.  The Court analyzes both of these provisions below.

    a.    <u>Preemption Under 15 U.S.C. § 1681h(e)</u>

Section § 1681h(e) states:  "Except as provided in sections 1681n and 1681o, no consumer may bring any action or proceeding in the nature of . . . negligence with respect to the reporting of information against any . . . person who furnishes information to a consumer reporting agency . . . *except as to false information furnished with malice or willful intent to injure such consumer*."[4]  15 U.S.C. § 1681h(e) (emphasis added).  Defendant claims immunity under section 1681h(e), as a matter of law, alleging that it neither reported false information nor

---

[4] Subsection "n" provides the remedy for willful noncompliance, and subsection "o" provides the remedy for negligent noncompliance.

acted with malice or willful intent to injure.  The Court, however, finds that both of these arguments involve genuine issues of material fact which foreclose summary judgment.

i.     <em>False Information</em>

Defendant's primary argument contends that it reported truthful information and, thus, is immune from state law claims under 15 U.S.C. § 1681h(e).  Section 1681s-2(a)(3), however, outlines the duty of furnishers of credit information to provide accurate data, as follows:

> If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

15 U.S.C. § 1681s-2(a)(3).  Plaintiff's complaint alleges that defendant neglected to report the disputed status of her account to the consumer reporting agencies.  Accordingly, she asserts that defendant's reports were not "proper" as they claim, but instead, incomplete, thereby contravening the above rule.  The Court deems such allegations sufficient to survive summary judgment.

In an effort to overcome plaintiff's contentions, defendant avers that "incomplete information" is different from "false information."  Such an argument, however, turns on a skewed interpretation of truthfulness.  Though "technically accurate," a report lacking pertinent information such as disputed debt is "actionable because it is misleading or materially incomplete."  Agosta v. Inovision, Inc., Civ. A. No.02-806, 2003 WL 22999213, at *5 (E.D. Pa. Dec. 16, 2003) (citing Koropoulos v. Credit Bureau, Inc., 734 F.2d 37 (D.C. Cir. 1984)).  By omitting the fact that plaintiff disputed her credit bills – not to mention plaintiff's separation from her husband – defendant's report could have misled potential creditors into thinking that

plaintiff had failed to repay money that she herself had borrowed.  As such, we reject MBNA's "technical accuracy defense" and find that defendant's credit reports may have been so incomplete and misleading as to constitute "false information" under the meaning of section 1681h(e).

Alternatively, defendant argues that the information it reported to the credit reporting agencies was "truthful" because it accurately reflected the status of plaintiff's account – i.e., "charged off."  We find, however, that this reasoning erroneously conflates *truth* as it pertains to a customer's actions, and *truth* as it pertains to the content of a credit record.  See Crane v. Trans Union, L.L.C., 282 F. Supp. 2d 311, 317 (E. D. Pa. 2003).  Clearly, section 1681h(e) requires furnishers of credit information to accurately report what a consumer has *done*, not merely what a bank chooses to include in its records.  See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cr. 1995) (defining "accuracy" under the FCRA in a more objective manner).  The defendant would have this Court believe that section 1681h(e) protects banks that furnish false facts about a customer, as long as the information matches what is stored in a customer database.  Such logic defies common sense and the meaning of the Act.[5]

In short, several disputed issues of material fact remain surrounding the accuracy of defendant's alleged reports to the national credit bureaus, Equifax, Experian, and Trans Union.  Accordingly, this Court does not find that defendant reported truthful information as a matter of law.

---

[5] "In some accounts of lying there is no lie unless a false statement is made; in others a person may be lying even if the statement he makes is true, as long as he himself believes the statement is false and intends by making it to deceive."  HARRY G. FRANKFURT, ON BULLSHIT 8 (Princeton University Press, 2005).

ii.    *"Malice or Willful Intent to Injure"*

Defendant also argues that it did not act with the requisite "malice" or "willful intent to injure."  To prove willfulness under section 1681h(e), plaintiff must show that defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others . . . ."[6]  Cushman, 115 F.3d at 226 (quoting Philbin v. Trans Union Corp., 101 F.3d 957, 970 (3d. Cir 1996)).  See also Wiggins v. Equifax Serv., Inc., 848 F. Supp. 213, 219 (D.D.C. 1993) (citing Stevenson v. TRW Inc., 987 F.2d 288, 293, 294 (5th Cir. 1993)).  This standard of willfulness has been followed in recent decisions from this district involving § 1681h(e).  See Lawrence v. Trans Union, L.L.C., 296 F. Supp. 2d 582, 590-91 (E.D. Pa. 2003);  O'Connor v. Trans Union Corp., Civ.A.No.974633, 1999 WL 773504, at *8 (E.D. Pa. Sept 28, 1999);  Crane, 282 F. Supp.2d at 322.

While the FCRA does not define "malice" as it applies to section 1681h(e), courts have adopted the meaning of the term used in libel litigation.  See O'Connor, 1999 WL 773504, at *8 (citing New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 84 S. Ct. 710 (1964)).  Thus, a statement made with malice is an allegedly defamatory statement which the speaker either knows is false or in which the speaker acts in reckless disregard of its truth or falsity.  Id.

In the case at bar, MBNA denies acting with malice or willful intent to injure.  In response, however, plaintiff has presented more than a "mere scintilla" of evidence that MBNA's actions were willful.  Specifically, she points to her direct disputes with MBNA in which she explained that her ex-husband had taken the cash advance without her permission or knowledge.  See Plaintiff's Response Brief, at 13 (citing Trial Exhibit P3).  Further, she cites

---

[6] Although the FCRA does not define the term, "willful", the Third Circuit has "assume[ed] without deciding" that willfulness under § 1681h(e) is identical to proof of willfulness under § 1681n of the Act., which provides the remedy for willful noncompliance.  Cushman v. Trans Union Corp., 115 F.3d 220, 229 (3d Cir. 1997).

evidence reflecting MBNA's awareness of these facts.  Id. at 4, 12 (citing Dep. Of MBNA's rep. D. English at pg. 90 and Trial Exhibit P2).  Plaintiff claims that despite her assertions, defendant failed to perform a complete investigation, failed to mark her debt as disputed, reported false information to three credit bureaus, and failed to even report the disputed status of her account. Id. at 13.

Considering this evidence in the light more favorable to plaintiff, the Court finds that a genuine issue of material fact remains.  As this Court cannot answer the question of intent under section 1681h(e) as a matter of law, defendant is not entitled to summary judgment on the state law claims under this provision.

b.    Preemption Under 15 U.S.C. § 1681t(b)(1)(F)

Defendant next argues that section 1681t(b)(1)(F) preempts all of plaintiff's state law causes of action.  This section states that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . ."  15 U.S.C. § 1681t(b)(1)(F).  This provision was not included in the original FCRA, but was added by way of amendment in 1996.  Congress never removed the original provision, thereby leaving both sections in p1lace.  Defendant now contends that section 1681t(b)(1)(F) subsumes section 1681h(e), making all state law claims against furnishers of credit information null and void under the FCRA.

As a primary matter, this Court disagrees that section 1681t(b)(1)(F) subsumes section 1681h(e) in light of the fact that this approach would render the latter utterly superfluous.  To presume that Congress wished to repeal an existing provision without clearly saying so would be

an awkward act of law-making that this Court should not and shall not undertake.  See TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S. Ct. 441 (2001) ("[I]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted)); Duncan v. Walker, 533 U.S. 167, 174, 121 S. Ct. 2120 (2001) ("We are reluctant to treat statutory terms as surplusage in any setting.") (internal alteration and quotation marks omitted).  The Court will not ignore the fact that Congress chose to leave section 1681h(e) in place after adding section 1681t(b)(1)(F).  Because the United States Supreme Court and the Third Circuit have historically presumed against implied repeals[7] and textual surplusage,[8] this argument is flawed.

As the canons of statutory construction lead us away from finding that section 1681t(b)(1)(F) completely subsumes section 1681h(e), this Court now looks to reconcile the two in a sensible manner.  Plaintiff believes the Court should employ a so-called "temporal analysis" to the problem.  This approach reasons that section 1681t(b)(1)(F) only applies to "subject matter regulated under . . . section 1681s-2 . . . ."  Id.  Plaintiff argues that because subsection (b) of section 1681s-2 is triggered only when a furnisher of credit information receives notice of a dispute *from a credit reporting agency*, state law claims based prior to the moment of this trigger do not fall under the "subject matter" of section 1681s-2 and, thus, are not preempted.  See

---

[7] See, e.g., Tennessee Valley Authority v. Hill 437 U.S. 153, 190, 98 S. Ct. 2279 (1978) ("In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable."  (quoting Morton v. Mancari 417 U.S. 535, 550, 94 S. Ct. 2474, 2482 (1974))); Posadas v. National City Bank, 296 U.S. 497, 503, 56 S. Ct. 349 (1936) ("[T]he intention of the legislature to repeal must be clear and manifest.").

[8] See, e.g., Babbitt v. Sweet Home Communities for a Great Oregon, et al, 515 U.S. 687, 719-720, 115 S. Ct. 2407, 2423 (1995) (finding that the term, "harm" when listed along with the terms,  "harass, pursue, hunt, shoot, wound, kill, trap, capture, or collect . . . ." should not be narrowly read to only refer to affirmative harms such those described by the other listed terms, but instead should refer to both affirmative *and indirect* harms).

generally <u>Aklagi v. Nationscredit Financial</u>, 196 F. Supp. 2d 1186, 1193 (D. Kan. 2002).  This argument, however, is flawed by virtue of the fact that "§ 1681s-2(a)(1)(A)  charges furnishers of information with a duty to report accurate information *regardless of whether the furnisher has notice of the dispute*."  <u>Gordon v. Greenpoint Credit</u>, 266 F. Supp. 2d 1007, 112-13 (S.D. Iowa 2003) (emphasis added).  Because section 1681s-2(a)(1)(A) applies irrespective of time, the temporal approach described above seems "strained at best."  <u>Gordon</u>, 266 F. Supp. 2d at 1013.

Instead, we look to the ordinary meaning of the statute's text.  The plain language of section 1681t(b)(1)(F) states that no "requirement or prohibition" can be imposed under state law "*relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .*" <u>Id.</u> (emphasis added).  That Congress so deliberately specified the *type* of state law claims prohibited under this section suggests they did not want to prohibit *all* state law claims.  If that had been their goal, they would have plainly stated so.  Rather, section 1681t(b)(1)(F) clearly reflects Congress' desire to prohibit all state statutory regulations pertaining to the accurate reporting of credit information.

This presumption is bolstered by the plain language of section 1681h(e), 1681t(b)(1)(F)'s sister section, which states that "no consumer may bring any action or proceeding in the *nature of defamation, invasion of privacy, or negligence*" except as to false information furnished with malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e) (emphasis added).  Again, Congress's care to specify the nature of the claims this section applies to indicates their intent.  Read alone, section 1681h(e) strongly suggests application only to state common law torts.  When read alongside section 1681t(b)(1)(F)  however, the symmetry is clear: section 1681h(e) applies to state common law and section 1681t(b)(1)(F) applies to state statutes.

11

At least one case from this Court has reached a similar outcome.   In Jaramillo v. Experian Info. Solutions, Inc., 155 F. Supp. 2d 356, 363 (E.D. Pa. 2001) ("Jaramillo I"), the court first held that 15 U.S.C. § 1681t(b)(1)(F) preempted state law claims based on defamation and the state consumer protection law, but upon reconsideration, permitted the defamation claim to proceed.   Compare Jaramillo, 155 F. Supp. 2d at 362, with Jaramillo v. Experian Info. Solutions, Inc., Civ. A. No. 00-5876, 2001 WL 1762626 (E.D. Pa. May 21, 2001) ("Jaramillo II"). Other courts have arrived at the same interpretation.   See, e.g., Johnson v. Citimortgage, Inc., 351 F. Supp. 2d 1368 (N.D. Ga. 2004); Jeffery v. Trans Union, L.L.C., 273 F. Supp. 2d 725 (E.D. Va. 2003); Carlson v. Trans Union, L.L.C., 259 F. Supp. 2d 517, 521 (N.D. Tex. 2003). As explained by the court in Carlson:

> Section 1681h(e) clearly applies to torts.  The section specifically references "any action or proceeding in the nature of defamation, invasion of privacy, or negligence."  15 U.S.C. s. 1681h(e).  All claims in the (non-exclusive) list are torts.  Section 1681t(b)(1)(F) gives every indication of dealing only with state statutory regulation.  This is made yet more clear when you consider the two laws that are specifically excluded from Section 1681t(b)(1)(F)'s coverage.   Section 54A(a) of Chapter 93 of the Massachusetts Annotated Laws requires furnishers to follow "reasonable procedures to ensure that the information reported to a consumer reporting agency is accurate and complete" and forbids furnishers to knowingly provide false information to a consumer reporting agency.   Likewise, section 1785.25(a) of the California Civil Code also deals with inaccurate or incomplete information in a credit report and closely follows the requirements of s 1681s-2.

Carlson, 259 F. Supp. 2d at 521 (emphasis in original).  We find this reasoning to be persuasive, as it "gives effect to both § 168t(b)(1)(F) and § 1681h(e) without having the illogical effect of protecting a furnisher of information more after [it] has received notice of a dispute than before it has received such notice." Johnson, 351 F. Supp. 2d at 1376.[9]

---

[9] Notably, defendant cites Purcell v. Universal Bank, N.A., Civ. A. No. 01-2678, 2003 WL 1962376, *5 (E.D. Pa. Apr. 28, 2003), in support for its argument that § 1681h(e) preempts all state law claims, be they statutory or common law, to the extent they fall within the subject matter regulated by the FCRA.  We find this case, however to be distinguishable.  Primarily, Purcell was a case brought under the Fair Credit Billing Act, which has no similar preemption provision to the FCRA.  In dicta, the court noted that "[t]o the extent [plaintiff's] [state tort] claims are

In the case at bar, plaintiff brings a negligence claim under Pennsylvania common law, and another claim under the Pennsylvania CPL.  Because the Pennsylvania CPL is a state statute that relates to furnishers of credit information, such as defendant, plaintiff's CPL claim is barred as a matter of law, under 15 U.S.C. § 1681t(b)(1)(F).  Plaintiff's state law negligence claim, however, remains completely unaffected by section 1681t(b)(1)(F), which only applies to statutory law.  Thus, we grant summary judgment with regards to plaintiff's CPL claim.

3.    Punitive Damages

In the second portion of its Motion for Summary Judgment, defendant seeks to foreclose plaintiff's efforts to obtain punitive damages under FCRA or its state law claim of negligence.  It theorizes that plaintiff is unable to establish the level of willfulness or reckless indifference required to obtain such damages.   In turn, plaintiff counters that defendant's policies and practices demonstrate that its violations of both the FCRA and state law were willful, thereby justifying an award of punitive damages.

a.    Punitive Damages Under the FCRA

Pursuant to 15 U.S.C. § 1681n(a)(2), "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . such amount of punitive damages as the court may allow."   As noted above, this standard requires a plaintiff to prove that defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others . . . ."   Cushman v. Trans Union Corp., 115 F.3d 220, 226 (3d Cir. 1997) (internal quotations

---

based upon a reporting of delinquency to consumer credit agencies, they are preempted by [§ 1681t]."  Id.  By way of a brief supporting discussion, the court cited the reasoning of Jaramillo.  Although it acknowledged that the Jaramillo court reversed itself without explanation, it failed to recognized that, by way of that reversal, the Jaramillo court distinguished between state statutory laws covered by the FCRA and state tort claims.  Cf Campbell v. Chase Manhattan Bank, U.S.A., N.A., Civ. A. No. 02-3489, 2005 WL 1615221, *16-*17 (D.N.J. June 27, 2005) (reaching the same conclusion as Purcell and citing only Purcell and Jaramillo I in support).

omitted).  The Third Circuit has explained that "to justify an award of punitive damages, a defendant's actions must be on the same order as willful concealments or misrepresentations." Id. at 227.

Numerous cases from this district have allowed punitive damage claims to survive summary judgment for alleged willful violations of the FCRA where the intent of the defendant remained subject to a factual determination.  See, e.g., Lawrence v. Trans Union LLC, 296 F. Supp.2d 582, 590 (E.D. Pa. 2003) (failure of credit bureau to forward documentation, knowingly misleading plaintiff into believing it was verifying accuracy of a judgment against her and purchasing and publishing a lawsuit it knew nothing about were sufficient allegations to sustain a claim of punitive damages in a motion for summary judgment);  Crane v. Trans Union, LLC, 282 F. Supp.2d 311, 321 (E.D. Pa. 2003) (failure of credit reporting agency to either forward supplemental documentation regarding a disputed account to a creditor or to independently analyze a dispute could, if proven before a jury, warrant an award of punitive damages); Evantash v. G.E. Capital Mortgage Servs., Inc., Civ. A. No. 02-1188, 2003 WL 22844198, *8 (E.D. Pa. Nov. 25, 2003) (inaccurate reporting by credit bureau despite creditor's notification that information was incorrect could rise to the level of conscious or reckless disregard of plaintiff's rights justifying an award of punitive damages); Sheffer v. Experian Info. Solutions, Inc., Civ. A. No. 02-7407, 2003 WL 21710573, *3 (E.D. Pa. July 24, 2003) (denying summary judgment on punitive damages claim where evidence suggested that problems experienced by plaintiff were "not the result of mere human error" and "not promptly cured.").

In the case at bar, MBNA contends that it was engaged in the proper reporting of truthful information, with no proven intent to injure plaintiff.  Plaintiff, on the other hand, alleges that defendant's conduct reached the willfulness standard in light of the fact that defendant (1) never

investigated plaintiff's dispute as a fraud, despite her repeated requests; (2) never marked plaintiff's account as disputed and, thus, never reported such a disputed status to the credit agencies; (3) changed the account number for a particular account without telling the credit bureaus and then deleted that account from one bureau, only to continue reporting it under another account number to another bureau; and (4) continues to report the disputed account only with the Experian credit bureau, but has yet to mark it disputed.  These circumstances, if true, would suggest that plaintiff's credit problems were "not the result of mere human error" and that, despite her efforts, the mistakes were "not promptly cured."  Thus, such allegations suffice to support an award of punitive damages for willful intent to injure.  The Court stands constrained to avoid any weighing of the evidence or determination of credibility.  The contrasting allegations presented by the parties in this matter create a genuine issue of material fact ripe solely for a jury's deliberation.  See Harter v. GAF Corp., 967 F.2d 846, 851-852 (3d Cir. 1992) ("Usually, '[w]illfulness is a factual question requiring an examination of [a party's] state of mind, knowledge, intent and belief regarding the propriety of [its] actions,' and as such, summary judgment is inappropriate.") (internal quotations omitted).  Accordingly, we deny defendant's motion for partial summary judgment on this issue.

b.    Punitive Damages Under Pennsylvania Law

The legal standard for punitive damages for state law claims is a matter of state law.  See Griffiths v. CIGNA Corp., 857 F. Supp. 399, 409-410 (E.D. Pa. 1994), aff'd, 60 F.3d 814 (3rd Cir. 1995).  Pennsylvania state courts have embraced Section 908(2) of the Restatement (Second) of Torts, which states that "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference[10] to the rights of

---

[10]    Section 500 of the Restatement (Second) of Torts defines "reckless disregard" as follows:

others." RESTATEMENT (SECOND) OF TORTS, §908(2) (1979); <u>Rizzo v. Haines</u>, 555 A.2d 58, 69 (Pa. 1989); <u>see also</u> <u>Kirkbride v. Libson Contractors</u>, 555 A.2d 800, 803 (Pa. 1989). The state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious. <u>Feld v. Merriam</u>, 485 A.2d 742, 747-748 (Pa. 1984). Notably, "[n]either mere negligence, nor even gross negligence, shows sufficient culpability to justify a punitive damages award." <u>Smith v. Celotex Corp.</u>, 564 A.2d 209, 211 (Pa. 1989).

Despite the more stringent standard for punitive damages under state law, the Court again takes heed of the paucity of clearly developed facts and supporting evidence in this matter. The plaintiff alleges circumstances which, if true, could lead a reasonable jury to find that defendant was recklessly indifferent to plaintiff's rights. Defendant, for its part, has failed to present any evidence to eliminate all genuine issues of material fact. Accordingly, the Court declines to grant summary judgment on this issue.

B.   Motion *in Limine* Issues

In the next portion of its currently pending motion, defendant seeks to render inadmissible two types of evidence. First, defendant wishes to preclude any evidence relating to the fact that MBNA sent a debt collector, NCO Financial Systems, Inc. ("NCO"), after her by selling the disputed debt to that entity. Second, it claims that any evidence regarding the number of disputes processed per hours by MBNA are wholly irrelevant and prejudicial. The Court addresses each contention individually.

---

The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Restatement (Second) of Torts §500.

1.    <u>NCO Evidence</u>

As noted, the first evidentiary issues involves debt collector NCO.  Following its inability to collect on the debt from plaintiff, defendant sold plaintiff's debt to NCO, who, according to plaintiff's allegations, engaged in some inappropriate collection tactics.  Defendant now contends that plaintiff should not be permitted to introduce any evidence or argument regarding either the sale of the credit balance to NCO or NCO's activities in attempting to collect on the debt, since such facts have no relevance to the case at bar.  Moreover, it argues that any reference to NCO's activities would mislead the jury to attribute NCO's activities to MBNA.

In response to this argument, plaintiff claims that the NCO evidence is crucial in two respects: willfulness and damages.  First, she avers that, despite MBNA's knowledge that it could not properly collect on the debt from plaintiff, it sold the debt to NCO, thereby evidencing willfulness and/or reckless disregard for her rights.  Second, she contends that the fact that MBNA caused a debt collector to go after her contributes to her frustration, embarrassment and emotional distress damages.

In light of such allegations, the Court finds pertinent the evidence regarding the sale of the debt to NCO.  Primarily, if plaintiff can establish that the debt was clearly disputed by her and that defendant knew or had reason to know that she was not responsible for the debt, then defendant's act of selling it to NCO would provide proof of its alleged willful intent to injure plaintiff.  Moreover, if plaintiff can prove emotional distress resulting from the actual sale of her debt to NCO, then such evidence becomes relevant to her damages claim.  <u>See</u> <u>Philbin v. Trans Union Corp.</u>, 101 F.3d 957, 963 (3d Cir. 1996) (claims of humiliation, embarrassment and emotional distress are indeed cognizable under the FCRA); <u>Crane v. Trans Union, LLC</u>, 282 F. Supp.2d 311, 319 (E.D. Pa. 2003) (same).

To the extent that plaintiff seeks to introduce evidence of NCO's debt collection activities, however, this Court reaches a different conclusion. Even though humiliation and embarrassment are recoverable damages under the FRCA, plaintiff is still bound to prove causation between the acts of MBNA and her injury. The emotional distress relating to the actions of NCO fail to make that relevant nexus. Had she wanted to recoup such damages, plaintiff should have sought recovery directly from NCO under the Fair Debt Collection Practices Act ("FDCPA"), which was enacted in part "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Nonetheless, she limited her complaint to an FCRA cause of action, coupled with state law negligence and CPL claims, against only MBNA.[11] In that regard, the activities of NCO, an independent debt collection agency, have no bearing on whether MBNA violated its duty to furnish accurate information to consumer reporting agencies. We thereby grant defendant's motion to prohibit such evidence.

2.    "Disputes Per Hour" Quota

Defendant next seeks to preclude evidence referring to the number of disputes per hour processed by MBNA's employee's. It contends that such evidence is wholly irrelevant to this matter. Further, it asserts that it is prejudicial in that any evidence of the disputes per hour processed by MBNA has no bearing on the amount of time taken to process plaintiff's specific disputes. Nonetheless, a jury exposed to information regarding the average processing time could improperly believe that MBNA's investigations of the particular disputes relating to plaintiff were conducted in the same amount of time.

---

[11]    Moreover, even had plaintiff pursued a claim under the FDCPA, this Act only applies to "debt collectors." MBNA is neither a "debt collector" nor vicariously liable for the actions of a debt collector to whom it sold an account.  See Pollice v. National Tax Funding, 225 F.3d 379, 404 (3d Cir. 2000); Flamm v. Sarner Assoc., Civ. A. No. 02-4302, 2002 WL 31618443, *7-8 (E.D. Pa. Nov. 6, 2002).

The Court finds defendant's argument to be flawed on two bases.  First, the information is directly relevant under 15 U.S.C. § 1681s-2(b)(1), which states that a creditor must conduct a investigation of a consumer's disputes.  15 U.S.C. § 1681s-2(b)(1).  Although the Act does not define the level of investigation required, numerous courts have agreed that section 1681s-2(b)(1)'s investigation requirement for furnishers of credit information "is analogous to the requirement imposed upon credit reporting agencies under § 1681i(a) to reinvestigate a consumer's dispute regarding information contained in his credit report." Evantesh v. G.E. Capital Mtg. Svcs., Inc., Civ. A. No. 02-1188, 2003 WL 22844198, *6 (E.D. Pa. Nov. 25, 2003) (citing Bruce v. First U.S.A. Bank, National Assoc., 103 F. Supp.2d 1135, 1143 (E.D. Miss. 2000).  Therefore, furnishers of credit are required to conduct a "reasonable investigation." Id. See Johnson v. MBNA Bank, N.A., 357 F.3d 426, 432-433 (4th Cir. 2004) (furnisher of credit information must conduct reasonable investigation of consumer's dispute).  To determine reasonableness, courts have applied an analysis weighing "the cost of verifying the accuracy of the information versus the possible harm of reporting inaccurate information." Id. (citing Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997)).  Thus, the number of disputes processed by MBNA per hour goes directly to that analysis by providing a basis for the cost of the investigation to plaintiff. See Cushman, 115 F.3d at 222, 225 (fact that agency paid its clerks $7.50 per hour and expected them to perform ten investigations per hour was relevant in cost-benefit analysis to determine whether particular investigation was reasonable).

To the extent defendant argues that jury will be improperly misled into believing that its average dispute-processing time is representative of the time spent on plaintiff's dispute, its argument disregards well-established a fundamental principle of the Federal Rules of Evidence. Rule 406 states as follows:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

FED. R. EVID. 406.  Pursuant to this rule, evidence that MBNA routinely processed an average of 24 disputes per hour is relevant to prove that MBNA acted in conformity with regards to plaintiff's disputes, processing it in an average time of two and a half minutes.  The burden then falls on defendant at trial to prove that it varied from its standard practice with regards to plaintiff's case.  Accordingly, the Court denies the motion *in limine* on this point.

III.   CONCLUSION

Having thoroughly considered the allegations raised by defendant, the Court concludes that summary judgment shall be granted only with regard to plaintiff's claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201.1, et seq. (Count 3).  Moreover, the Court shall grant defendant's motion *in limine* only to the extent that it seeks to preclude evidence regarding NCO's debt collection activities.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CLAUDIA D. DIPRINZIO            :            NO. 04-872
                               :
            Plaintiff,          :
                               :
VS.                             :
                               :
MBNA AMERICA BANK, N.A.,         :
                               :
            Defendant           :

## ORDER

AND NOW, this 24*th* day of *August*, 2005, upon consideration of Defendant MBNA

America Bank's Motion *in Limine* (Doc. No. 29) and the Response of Plaintiff Claudia DiPrinzio

thereto, it is hereby ORDERED as follows:

1.     Summary Judgment shall be GRANTED with respect to Count III of plaintiff's
       Complaint.

2.     Summary Judgment shall be DENIED with respect to the remainder of plaintiff's
       state law claims and punitive damages claims.

3.     Plaintiff shall be precluded from introducing, at trial, any evidence of the debt-
       collection activities of NCO Financial Systems, Inc.

4.     The remainder of Defendant's Motion *in Limine* shall be DENIED.

It is so ORDERED.


                                    BY THE COURT:



                                    _____
                                    CHARLES B. SMITH
                                    UNITED STATES MAGISTRATE JUDGE