IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAUDIA D. DIPRINZIO, | : | |
| | : | Civil Action |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 04-872 |
| | : | |
| MBNA AMERICA BANK, N.A., | : | |
| | : | (Smith, J.) |
| Defendant. | : | |
| | : | |

**DEFENDANT MBNA AMERICA BANK, N.A.'S
AMENDED TRIAL BRIEF**

**I.   Introduction**

Defendant MBNA America Bank, N.A. ("MBNA" or "Defendant") submits this Trial Brief to provide this Honorable Court with MBNA's analysis of certain factual and legal issues that may be presented at trial.[1]

**II.   Facts**

In July 1999, Ms. DiPrinzio and her then-husband, Richard Previdi, jointly applied for a credit card account with First Union. Amended Joint Pretrial Stipulation ("Stip."), § I.1; Exhibit D-1.[2] Ms. DiPrinzio admits that her signature appears on the First Union joint credit card application. Deposition of Ms. DiPrinzio, 10/21/04 ("DiPrinzio Dep."), 51:21-24,

---

[1] Defendant's Trial Brief is "Amended" because a prior version was submitted to the Court when the matter was pending before Judge Ludwig. This Amended version accounts for the Court's dismissal of Count III of the Complaint and Plaintiff's voluntary dismissal of Counts II and V, and also accounts for Defendant's requested bifurcation of Plaintiff's punitive damages claims.

[2] All "Exhibit D-_" references are to the documents contained in MBNA's trial exhibit binder, which has been submitted to the Court. The depositions in this matter have also been submitted to the Court.

52:23-53:3; Exhibit D-1. In 2001, First Union sold Ms. DiPrinzio's and Mr. Previdi's joint credit card account to MBNA. Stip., § I.3.

Ms. DiPrinzio admitted that she used the MBNA joint credit card account on a number of occasions during her marriage to Mr. Previdi. Stip., § I.5. For example, she apparently used the MBNA account on at least seven occasions from February 2000 through April 2001 for purchases from her employer, Varsity Spirit Fashions, for which she worked from 1998 until recently. DiPrinzio Dep., 13:13-14:3, 14:22-20:19, 59:2-62:21, 64:24-65:14; Exhibits D-6, D-7, D-10, D-14, D-19, D-20.

Ms. DiPrinzio and Mr. Previdi legally separated on or about April 23, 2001, after which time Mr. Previdi moved to Colorado. Stip., § I.6. Although Ms. DiPrinzio had used the MBNA joint credit card account only a few weeks before, she did not contact MBNA, either at the time of her separation or immediately thereafter, to close the jointly-held MBNA account, to seek to have herself removed from the account, or to notify MBNA of her separation. Stip., § I.7; Exhibit D-20.

More than four months later, on August 28, 2001, Mr. Previdi took a cash advance of approximately $15,000 on the MBNA joint credit card account.[3] Stip., § I.8; Exhibit D-23. As noted above, at that point, MBNA still had not been notified by Ms. DiPrinzio that she had separated from her husband, nor had it been asked by Ms. DiPrinzio to terminate her joint responsibility for the account. Stip., § I.7. Since that time, neither Ms. DiPrinzio nor Mr. Previdi has provided any funds to MBNA at any point as repayment for the cash advance taken on the joint credit card account. Stip., § I.9.

---

[3] Ms. DiPrinzio has not filed suit against her former husband or otherwise attempted to recover any funds from him through litigation.

Months later, the Court of Common Pleas of Delaware County entered a divorce decree on April 22, 2002, ending the marriage of Ms. DiPrinzio and Mr. Previdi. Stip., § I.10.

After an extended period of time had elapsed without payment on the joint account, MBNA "charged off" the account on or about October 30, 2002, and reported that status to the credit reporting agencies ("CRAs")—Trans Union, Equifax and Experian—as applicable to the credit files of both Ms. DiPrinzio and Mr. Previdi.

Several months later, Ms. DiPrinzio, invoking the FCRA dispute procedure through the CRAs, claimed that she was not responsible for the MBNA account and therefore asserted that the "charged off" account status should not appear on her credit reports. Stip., § I.11. MBNA was notified of Ms. DiPrinzio's disputes through only two of the national credit bureaus, Equifax and Experian. Deposition of Denise English, 10/20/04 ("English Dep."), 90:18-91:16; Exhibits D-65, D-66. MBNA was not notified of a dispute through the third national credit bureau, Trans Union. English Dep., 90:18-91:16.

Equifax conveyed Ms. DiPrinzio's dispute to MBNA by providing MBNA only with a single-page Automated Customer Dispute Verification form ("ACDV")[4] dated March 27, 2003. Exhibit D-65. The Equifax ACDV concerned the account number ending in "4815" and stated: "Consumer claims true identity fraud account fraudulently opened." Exhibit D-65. Notwithstanding the fact that this statement was patently incorrect in light of the facts set forth above, MBNA responded to Equifax on April 12, 2003 with a request that Equifax delete that account number from Ms. DiPrinzio's Equifax credit file because that was the prior, "open" account number associated with the MBNA account before the "charge off." Exhibit D-65;

---

[4] These single-page forms are normally the only documents sent by the CRAs to the credit furnishers in processing a dispute. See, e.g., Evantash v. G.E. Capital Mortg. Services, Inc., 2003 WL 22844198, *1-*2 (E.D. Pa. 2003).

English Dep., 68:4-20, 71:18-72:5, 120:4-121:4; Stip., § II.5. Concurrently with its request to Equifax, MBNA, through an automated system known as "E-Oscar," sent carbon-copies of this request to both Trans Union and Experian. English Dep., 102:16-103:4, 116:21-117:21; Exhibit D-70.

Regarding the other CRA dispute, Experian conveyed Ms. DiPrinzio's dispute to MBNA by providing MBNA solely with a single-page ACDV dated March 27, 2003. Exhibit D-66. The Experian ACDV concerned the account number ending in "5018." Exhibit D-66. MBNA conducted an investigation of this dispute. English Dep., 49:13-50:14. Since the "5018" account number was (and still is) the "charge off" account number associated with Ms. DiPrinzio's MBNA credit card account, MBNA responded to Experian on or about April 15, 2003 by stating: "Account information accurate as of date reported." Exhibit D-66; English Dep., 88:5-22; Stip., § I.13. Because MBNA did not report to Experian that the information respecting account number "5018" was either incomplete or inaccurate, it did not send carbon-copies of this response to Trans Union and Equifax. Stip., § I.14. As of this date, MBNA continues to report the MBNA account, via account number "5018," to the three reporting agencies. English Dep., 88:5-22.

MBNA believed at the time of the disputes, and continues to believe, that it is accurately reporting the joint credit card account to the CRAs because Ms. DiPrinzio was jointly responsible for the charges on the account. As previously explained, MBNA had not been requested to close the account, had not been requested to remove Ms. DiPrinzio from the account, and/or had not been notified of the separation at the time the cash advance was taken on the joint account.

**III.   Anticipated Issues at Trial**

   **A.   Count I: Plaintiff's FCRA Claim**

      **1.   Legal Standards**

Plaintiff's Fair Credit Reporting Act ("FCRA" or "Act") claim arises solely under subsection "s-2(b)" of the Act.  Such is the case because FCRA only allows for a civil action against a credit furnisher like MBNA under that specific subsection.[5]  See 15 U.S.C. § 1681s-2(b), (c), & (d); Evantash v. G.E. Capital Mortg. Services, Inc., 2003 WL 22844198, *7 (E.D. Pa. 2003) ("[t]here is no private right of action for a violation of Section 1681s-2(a)"); Sheffer v. Experian Information Solutions, Inc., 249 F. Supp. 2d 560, 562 (E.D. Pa. 2003) ("the negative inference of explicitly precluding a consumer's right of action for violations of § 1681s-2(a) is that they are preserved in § 1681s-2(b)").  Subsection "s-2(b)" provides as follows:

> *(b)   Duties of furnishers of information upon notice of dispute*
>
>   *(1)   In general*
>
>   After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
>   (A) conduct an investigation with respect to the disputed information;
>
>   (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

---

[5]   The parties have essentially stipulated to this point.  Specifically, the parties agree that Ms. DiPrinzio may not introduce evidence regarding, or recover under FCRA based upon, any alleged failure of MBNA to properly respond to disputes lodged by Plaintiff directly to MBNA (not through any of the credit bureaus).  See Stip., § VII.A (citing 15 U.S.C. § 1681s-2(a)(1)(B), § 1681s-2(c), § 1681s-2(d)).  The parties have also stipulated that Ms. DiPrinzio may not introduce evidence regarding, or recover under FCRA based upon, any alleged failure of MBNA to note or otherwise mark Plaintiff's account as "disputed."  See Stip., § VII.B (citing 15 U.S.C. § 1681s-2(a)(3), § 1681s-2(c), § 1681s-2(d)).

> (C) report the results of the investigation to the consumer reporting agency; and
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

15 U.S.C. § 1681s-2(b).[6] The "investigation" referred to in subsection "s-2(b)(1)(A)" is a "reasonable investigation." Evantash, 2003 WL 22844198, *6.

In the credit reporting industry, the "notice pursuant to section 1681i(a)(2)" referenced above is the ACDV form submitted by a credit bureau to the credit furnisher. See supra n. 4. Thus, a credit furnisher's FCRA duties do not begin, for purposes of civil liability, until it receives an ACDV form from a credit bureau. Accordingly, a credit furnisher is not liable under FCRA based on evidence of direct contacts by a customer to the furnisher, and cannot be held liable based on any actual inaccuracies it may have provided in its credit reporting. Rather, a credit furnisher's duty is limited to investigation and reporting under subsection "s-2(b)."

The duty of investigation imposed on a credit furnisher is limited. Indeed, in this Court's recent decision in Farren v. RJM Acquisition Funding, LLC, 2005 WL 1799413 (E.D. Pa. July 26, 2005), the Court relied on Westra v. Credit Control Of Pinellas, 409 F.3d 825 (7th Cir. 2005), which "explicitly rejects the argument that a data furnisher needs to contact every debtor disputing a debt or go beyond a verification of the relevant information provided." Farren, 2005 WL 1799413, at *6. Further, the Farren court explained:

---

[6] This case arises under the former version of subsection "s-2(b)," as the FACT Act changes to the subsection did not take effect until after relevant events in this case. See 15 U.S.C. § 1681s-2 (credits).

> [FCRA] does not require [the defendant] or any data furnisher to take extraordinary means to investigate and discover disputed information but rather calls for a more passive investigation where the data furnisher is determining only that the information provided to it matches the information in its records. The Court will not impose duties upon a data furnisher that Congress did not see fit to impose.

Farren, 2005 WL 1799413, at *7.

### 2. Required Proof and Evidentiary Issues

In this case, Ms. DiPrinzio must show that MBNA, upon receipt of the ACDVs from Equifax and Experian, failed to conduct a reasonable investigation, failed to report its results, and failed to provide those results to the other bureaus if a change was required. As stated previously, MBNA maintains that a reasonable investigation was conducted and that it complied with FCRA. Any investigation under the circumstances would have confirmed Ms. DiPrinzio's responsibility for the account, as she was a joint account holder with her former husband and therefore was responsible for all charges on the account. See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 405 (3d Cir. 1993) (citing Morrison v. American Sur. Co., 224 Pa. 41, 73 A. 10, 11 (1909)) (co-signers or co-obligors on a contract are jointly and severally responsible where the agreement evidences such intent); see also State Savings Bank v. Watts, 1997 WL 101658, *1-*2 (Ohio App. 10th Dist. 1997) (holding defendant liable for debt on joint credit card because she was a co-applicant on the account with her former husband); FCC Nat'l Bank v. Blake, 1992 WL 379378, *2 (Ohio App. 12th Dist. 1992) (same).

## B. Count IV: Plaintiff's Negligence Claim

### 1. Legal Standards

The legal standards for negligence, including those relevant to MBNA's defense that Ms. DiPrinzio was contributorily negligent, are well-settled. See Pa. SSJI (Civ) 3.00, 3.01,

3.03, 3.03A, 3.25.  However, there is one particular nuance that applies to the negligence claim in this case that is required by FCRA.  Specifically, Ms. DiPrinzio must prove more than simple negligence on the part of MBNA; she must show that MBNA furnished false information to the CRAs with malice or willful intent to injure Ms. DiPrinzio.  This heightened standard of proof is required by force of subsection "h(e)" of FCRA, which provides that "no consumer may bring any action . . . in the nature of . . . negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . *except as to false information furnished with malice or willful intent to injure such consumer*."  15 U.S.C. § 1681h(e) (emphasis added); see Farren v. RJM Acquisition Funding, LLC, 2005 WL 1799413, *5, *8 (E.D. Pa. July 26, 2005) (dismissing state law claims based on subsection "h(e)"; "Courts have generally interpreted ["h(e)"] to only permit claims where the actions of the furnisher of information were willful. . . .  Conversely, if the actions of the furnisher of information were not willful, the state law claims are preempted by ["h(e)"] and the Court must dismiss those claims.").

### 2. Required Proof and Evidentiary Issues

MBNA asserts that Ms. DiPrinzio cannot show that MBNA furnished false information to the CRAs with malice or willful intent to injure Ms. DiPrinzio.  Respecting contributory negligence, MBNA argues that Ms. DiPrinzio was contributorily negligent in failing to close the MBNA account or notify MBNA of her separation at any time between her separation and the time of the cash advance.

### C. Plaintiff's Punitive Damages Claims[7]

#### 1. Legal Standards

Under Pennsylvania law, Punitive damages are permitted only "for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005) (citations omitted); see Modern Federal Jury Instructions-Civil 77-5 & comment; Pa. SSJI (Civ) 14.00 & note; Pa. SSJI (Civ) 14.02. The FCRA punitive damages standard is nearly identical. See Cushman v. Trans Union Corp., 115 F.3d 220, 226-27 (3d Cir. 1997) (a plaintiff "must show that [the defendant] 'knowingly and intentionally committed an act in conscious disregard for the rights of others,' . . . . [W]e conclude that to justify an award of punitive damages [under FCRA], a defendant's actions must be on the same order as willful concealments or misrepresentations.").

"As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." Hutchison, 870 A.2d at 770 (citations omitted). "The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct." Id. (citations omitted). In deciding whether to impose punitive damages, "[t]he state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious." Id. (citations omitted; alteration in original).

#### 2. Required Proof and Evidentiary Issues

MBNA contends that Ms. DiPrinzio cannot meet the burden imposed by the foregoing punitive damages standards.

---

[7] MBNA has moved for bifurcation regarding Plaintiff's claims for punitive damages.

Respectfully submitted,

Dated: September 12, 2005

/s/ Karl S. Myers (VSC # KSM2012)
Paul M. Hummer, Esquire
Karl S. Myers, Esquire
Pa. Id. Nos. 46413 & 90307
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-7777
*Attorneys for Defendant*
*MBNA America Bank, N.A.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAUDIA D. DIPRINZIO, | : | |
| | : | Civil Action |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 04-872 |
| | : | |
| MBNA AMERICA BANK, N.A., | : | |
| | : | (Smith, J.) |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Defendant MBNA America Bank, N.A.'s Amended Trial Brief* was served today upon counsel for the parties by hand delivery, addressed as follows:

John Soumilas, Esquire
Francis & Mailman, P.C.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
*Counsel for Plaintiff*

Dated: September 12, 2005    /s/ Karl S. Myers (VSC # KSM2012)